## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

| | |
|---|---|
| SALLIE E. LILLY, )<br>)<br>Plaintiff, )<br>)<br>v. )<br>)<br>MICHAEL J. ASTRUE, )<br>Commissioner of Social Security, )<br>)<br>Defendant. ) | **MEMORANDUM OPINION<br>AND RECOMMENDATION**<br><br>1:08CV53 |

Plaintiff, Sallie E. Lilly, brought this action pursuant to sections 205(g) and 1631(c)(3) of the Social Security Act, as amended (42 U.S.C. §§ 405(g) and 1383(c)(3)), to obtain judicial review of a final decision of the Commissioner of Social Security denying her claims for Disability Insurance Benefits and Supplemental Security Income under, respectively, Titles II and XVI of the Social Security Act (the "Act"). The parties have filed cross-motions for judgment, and the administrative record has been certified to the court for review.

**Procedural History**

Plaintiff filed applications for Disability Insurance Benefits (DIB) and Supplemental Security Income (SSI) on July 6, 2004 (protective filing date, June 21, 2004), with an alleged onset of disability (AOD) of October 2, 2001.[1] Tr. 49, 277.

---

[1] Plaintiff previously filed a set of disability applications in 1997, see Tr. 69, and a second disability application in 2001, see Tr. 46. As with Plaintiff's current applications, that from 2001 gave her AOD as October 2, 2001. See id. It appears that the final decision on the 2001 applications was a denial after reconsideration on May 7, 2002. See Tr. 27. As
(continued...)

The applications were denied initially and upon reconsideration. Tr. 28, 29; 280, 282. Plaintiff requested a hearing de novo before an Administrative Law Judge (ALJ). Tr. 45. Present at the hearing, held on October 30, 2006, were Plaintiff, her attorney, and a vocational expert. Tr. 287.

By decision dated March 13, 2007, the ALJ determined that Plaintiff was not disabled within the meaning of the Act. Tr. 12. On November 19, 2007, the Appeals Council denied Plaintiff's request for review of the ALJ's decision, Tr. 4, thereby making the ALJ's determination the Commissioner's final decision for purposes of judicial review.

In deciding that Plaintiff is not entitled to benefits, the ALJ made the following findings, which have been adopted by the Commissioner:

> 1. The claimant meets the insured status requirements of the Social Security Act through December 31, 2007.
>
> 2. The claimant has not engaged in substantial gainful activity at any time relevant to this decision (20 CFR 404.1520(b), 404.1571 et seq., 416.920(b) and 416.971 et seq.).
>
> 3. The claimant has the following severe impairments: hypertension, diffuse osteoarthritis, and status post bilateral hip replacements (20 CFR 404.1520(c) and 416.920(c)).

Tr. 14. He continued:

---

[1] (...continued)
the ALJ adopted October 2, 2001, as Plaintiff's AOD, he apparently constructively reopened her 2001 DIB application. See, e.g., McGowen v. Harris, 666 F.2d 60, 65-66 (4th Cir. 1981).

2

> 4. The claimant does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925 and 416.926).
>
> . . .
>
> 5. After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to lift 20 pounds occasionally and ten pounds frequently, stand/walk six hours in an eight-hour workday, and sit six hours in an eight-hour workday.

Tr. 15. As a result of the RFC finding, the ALJ determined that Plaintiff was unable to perform her past relevant work. Tr. 18.

Plaintiff, born on September 14, 1953, was forty-eight years old at the time of her AOD, regulatorily defined as "a younger individual age 45-49. Id. (citing 20 C.F.R. §§ 404.1563 and 416.963). As of the date of the ALJ's decision, Plaintiff was fifty-three years old, defined as "closely approaching advanced age." Id. (citing 20 C.F.R. §§ 404.1563 and 416.963). The ALJ found that Plaintiff has a limited education and can communicate in English. He added that transferability of job skills was not an issue in the case. Based on these factors and Plaintiff's residual functional capacity (RFC), in conjunction with the Medical-Vocational Guidelines, 20 C.F.R. Part 404, Subpart P, Appendix 2, the ALJ concluded that Plaintiff had not been under a "disability," as defined in the Act, from her AOD through the date of his decision. Tr. 19 (citing 20 C.F.R. §§ 404.1520(g) and 416.920(g)).

**Analysis**

In her brief before the court, Plaintiff argues that the Commissioner's findings are in error because the ALJ based his RFC finding on Plaintiff's condition solely *after* her multiple surgeries. The Commissioner contends otherwise and urges that substantial evidence supports the determination that Plaintiff was not disabled.

Scope of Review

The Act provides that, for "eligible"[2] individuals, benefits shall be available to those who are "under a disability," defined in the Act as the inability:

> to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months[.]

42 U.S.C. §§ 423(d)(1)(A) and 1382c(a)(3)(A).[3]

To facilitate a uniform and efficient processing of disability claims, the Social Security Administration, by regulation, has reduced the statutory definition of "disability" to a series of five sequential questions. An examiner must determine whether the claimant (1) is engaged in substantial gainful activity, (2) has a severe impairment, (3) has an impairment which equals an illness contained in the Act's

---

[2] Eligibility requirements for DIB are found at 42 U.S.C. § 423(a)(1), and for SSI at 42 U.S.C. § 1382(a).

[3] The regulations applying these sections are contained in different parts of Title 20 of the Code of Federal Regulations (C.F.R.). Part 404 applies to federal old-age, survivors, and disability insurance, and Part 416 applies to supplemental security income for the aged, blind, and disabled. Since the relevant portions of the two sets of regulations are identical, the citations in this report will be limited to those found in Part 404.

listing of impairments, (4) has an impairment which prevents past relevant work, and (5) has an impairment which prevents him from doing any other work. Section 404.1520.

The scope of judicial review by the federal courts in disability cases is narrowly tailored to determine whether the findings of the Commissioner are supported by substantial evidence and whether the correct law was applied. Richardson v. Perales, 402 U.S. 389 (1971); Johnson v. Barnhart, 434 F.3d 650, 653 (4th Cir. 2005). Consequently, the Act precludes a de novo review of the evidence and requires the court to uphold the Commissioner's decision as long as it is supported by substantial evidence. See Mastro v. Apfel, 270 F.3d 171, 176 (4th Cir. 2001) (citing Craig v. Chater, 76 F.3d 585, 589 (4th Cir. 1996)). Substantial evidence is:

> "evidence which a reasoning mind would accept as sufficient to support a particular conclusion. It consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance. If there is evidence to justify a refusal to direct a verdict were the case before a jury, then there is 'substantial evidence.'"

Shively v. Heckler, 739 F.2d 987, 989 (4th Cir. 1984) (quoting Laws v. Celebrezze, 368 F.2d 640, 642 (4th Cir. 1966)).

Thus, it is the duty of this court to give careful scrutiny to the whole record to assure that there is a sound foundation for the Commissioner's findings, and that this conclusion is rational. Thomas v. Celebrezze, 331 F.2d 541, 543 (4th Cir. 1964). If there is substantial evidence to support the decision of the Commissioner, that decision must be affirmed. Blalock v. Richardson, 483 F.2d 773, 775 (4th Cir. 1972).

Issue

Plaintiff does not appear to challenge the ALJ's RFC finding as of the date of his decision. She complains, rather, that the ALJ, in making this finding, "relied on medical treatment evidence demonstrating that Plaintiff's pain symptoms improved following bilateral hip replacement surgeries and right knee surgery." Pl.'s Br. at 4 (citing Tr. 18). First, the court would point out that there is no requirement that the fact finder discuss every piece of evidence. See, e.g., Haynes v. Barnhart, 416 F.3d 621, 626 (7th Cir. 2005); Howard ex rel. Wolff v. Barnhart, 341 F.3d 1006, 1012 (9th Cir. 2003); Craig v. Apfel, 212 F.3d 433, 436 (8th Cir. 2000). Although the fact finder may not ignore evidence that detracts from his findings, see Clifton v. Chater, 79 F.3d 1007, 1009-10 (10th Cir. 1996), the court expects that he will "properly giv[e] specific reasons to support his conclusions," Wheeler v. Apfel, 224 F.3d 891, 896 (8th Cir. 2000).

In Plaintiff's case, the ALJ clearly relied on much more evidence than included in the one paragraph which Plaintiff quotes. Immediately following his RFC finding (Finding 5, Tr. 15), the ALJ explained, "In making this finding, the undersigned considered all symptoms and the extent to which these symptoms can reasonably be accepted as consistent with the objective medical evidence and other evidence[.]" Tr. 15 (citing section 404.1529 and Social Security Rulings 96-4p and 96-7p). In so doing, the ALJ cited to Plaintiff's testimony, which included Plaintiff's pain "*prior* to her hip replacements." Id. (emphasis added).

The ALJ next addressed the medical evidence, including that Plaintiff "has a *history* of diffuse osteoarthritis." Tr. 16 (emphasis added). He discussed Plaintiff's medical records, "beginning in December 2000," observing that "*[e]arly* treatment records show that the claimant's arthritis pain complaints were controlled with prescribed medication." Id. (emphasis added). Indeed, at Plaintiff's first medical visit after her AOD, on October 25, 2001, she told the caregiver that Vioxx helped her pain. Tr. 168. Her musculoskeletal examination revealed normal objective findings, but Plaintiff received an injection into her knee.

When Plaintiff consulted with surgeon David Fedder on December 10, 2001, he interpreted her magnetic resonance imaging ("MRI") to reveal only mild signal changes, no significant disc abnormalities, and no evidence of stenosis or bulging. Tr. 229. On examination, Plaintiff had no hip pain, and the doctor determined, given the lack of objective findings, that he would not administer an injection. In addition, a state disability employee stated that she "could not tell anything about [Plaintiff's] physical problems by looking at her." Tr. 71. Plainly, there is substantial evidence that, at Plaintiff's AOD, she retained the RFC for at least light work.

Plaintiff appears to allege that the ALJ must find differing levels of RFC at each point during the relevant period where she may have undergone a significant limitation shift. She fails, however, to provide appropriate legal support for this proposal. Of course, such a change would only be significant if it would lead to a finding that Plaintiff was unable "to engage in any substantial gainful activity . . . for

7

a continuous period of not less than 12 months," 42 U.S.C. §§ 423(d)(1)(A) and 1382c(a)(3)(A) – in essence, was disabled.

Although the Act itself does not provide for a closed period of benefits, the Administration has ruled that "a closed period of benefits may be awarded." Social Security Ruling (SSR) 74-6C, 1960-1974 Soc. Sec. Rep. Serv. 1007 (citing 42 U.S.C. § 416(i)(2)(D)). See also Harris v. Secretary of Dept. of Health & Human Servs., 959 F.2d 723, 724 (8th Cir. 1992) (citing section 404.316). Contrary to Plaintiff's suggestion, however, it is not enough for her to show that, for a period, her RFC was lower than that found by the ALJ. Rather, she must have presented evidence that she was *disabled* for a period of at least twelve consecutive months, not just that she had a lowered RFC for such period. Cf. section 404.1512(c) ("You must provide medical evidence showing that you have an impairment(s) and how severe it is during the time you say that you are disabled."). This she has failed to do.

After Plaintiff's December 2001 consultation with Dr. Fedder, she went several months with no musculoskeletal[4] medical care. Spring 2002 is remarkable in that Plaintiff did have several visits related to lower back and lower extremity pain. See Tr. 171-80. But with the exception of April and May 2002, Plaintiff went from December 2001 through December 2003 without seeking care for such pain.

---

[4] Plaintiff does not disagree with the ALJ's finding that her hypertension "is controllable with conservative treatment." Tr. 18.

Accordingly, except for that two-month period, Plaintiff failed to provide evidence that she was unable to perform light work, much less that she was unable to perform *any* work.

On January 2, 2004, Plaintiff began to seek help with right knee pain, see Tr. 204, and she returned to Dr. Fedder on February 16, see Tr. 230. A March 10 MRI revealed degeneration, see Tr. 232-33, and on April 14, Dr. Fedder performed arthroscopic surgery on Plaintiff's right knee, Tr. 243. As of May 19, Plaintiff was "much improved" from before her surgery, and Dr. Fedder opined that Plaintiff could return to work.[5] Tr. 237. By June 30, Plaintiff was "overall doing well," and Dr. Fedder found no erythema, induration, warmth or effusion. Tr. 239. He released Plaintiff from his care.

Although thereafter Plaintiff had occasional right knee complaints, objective findings on examination were always benign. See, e.g., Tr. 246 (good pulses, full extension, and no swelling or laxity). The ALJ fully summarized Dr. Fedder's treatment of Plaintiff. See Tr. 16. Further, Plaintiff's medical records reveal *no* knee complaints from December 10, 2004, until her last medical record dated August 15, 2006. Therefore, Plaintiff has not exhibited that she experienced a disabling knee impairment for the required twelve-month period.

As to Plaintiff's back and hip complaints, they do not show up in her medical records from May 2002 until April 2005. In February 2004, Plaintiff had some

---

[5] Interestingly, some 3 weeks later, Plaintiff protectively filed her disability applications.

9

diminished hip flexion and extension but no obvious crepitation with hip motion, and x-rays revealed no arthritic changes. Tr. 230. At a physical on June 29, Plaintiff had no complaints, and her musculoskeletal exam was within normal limits, Tr. 210-11.

On October 27, 2004, Plaintiff complained of both back and bilateral lower extremity pain. Tr. 222. On December 9, Plaintiff admitted that treatment with prescription medication helped "some," Tr. 224, and she did not seek care again until April 5, 2005, see Tr. 251. Although Plaintiff exhibited limited range of motion in her hips, she maintained "[e]xcellent" strength in her lower extremities. Id. Her x-rays, however, did reveal bilateral end stage degenerative joint disease in her hips, and "some" degenerative disc disease at a single level. Id. Her new surgeon, Harrison Latimer, opined that Plaintiff was "*currently* not employable," id. (emphasis added), but gave no indication when this inability began.

Because Plaintiff's pain continued, on May 4, 2005, she requested total hip replacement. Tr. 252. After experiencing "excellent result" with her right total hip replacement, Tr. 256, Plaintiff underwent a left hip replacement, see Tr. 257. By September 19, Plaintiff had "no complaints whatsoever and ambulate[d] without a limp." Id.

At her follow up three weeks later, Plaintiff was "happy" with her surgery and ambulated well. Tr. 258. Dr. Latimer saw no evidence of complications. On November 10, the doctor exclaimed that "[e]verything looks fabulous," and that

Plaintiff was "doing quite well." Tr. 259. In January 2006, Plaintiff's general caregiver also observed that she was "doing well," including her hips. Tr. 264.

Plaintiff complained of knee pain in August 2006, but she was still ambulating well, without a limp, and her hip replacements were doing fine. Tr. 262. Plaintiff's only diagnosis was of *mild* osteoarthritis of the knee, and Dr. Latimer released Plaintiff from his care. At most, Plaintiff was significantly limited by her hip pain only from April 2005 through July 2005. Again, she has failed to establish that she was unable to work for a twelve-month period.

The ALJ thoroughly reviewed Dr. Latimer's records also. See Tr. 16-17. He even gave "controlling weight" to Dr. Latimer's opinion that Plaintiff could not "engage in manual labor" because the opinion was "consistent with laboratory and clinical findings" and with the record. Id. The ALJ found, however, that this opinion was "not inconsistent with the undersigned's findings." Id. Plaintiff has not challenged this statement, and it is plain evidence that the ALJ considered Plaintiff's RFC not only after her surgeries, but before. Cf. Clifton v. Chater, 79 F.3d 1007, 1009-10 (10th Cir. 1996) ( So long as the record demonstrates that the ALJ considered the evidence, he is "not required to discuss every piece of evidence."). Accordingly, the court finds that Plaintiff has established no reversible error.

11

Case 1:08-cv-00053-NCT-WWD   Document 16   Filed 09/10/09   Page 11 of 12

**Conclusion and Recommendation**

For the foregoing reasons, the decision of the Commissioner is supported by substantial evidence and the correct legal principles were applied. Therefore, **IT IS RECOMMENDED** that the Commissioner's decision finding no disability be **AFFIRMED**. To this extent, Plaintiff's motion for summary judgment (docket no. 11) seeking a reversal of the Commissioner's decision should be **DENIED**, Defendant's motion for judgment on the pleadings (docket no. 14) should be **GRANTED**, and this action should be **DISMISSED** with prejudice.

WALLACE W. DIXON
United States Magistrate Judge

September 10, 2009